FILED

2008 Jan-08  AM 09:07
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| ETTA GRAHAM o/b/o T.R.G., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 7:06-CV-1898-LSC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

I.    Introduction.

Plaintiff, Etta Graham, on behalf of her minor child, T.R.G., appeals

the decision of the Administrative Law Judge ("ALJ") denying her

application for Child's Supplemental Security Income ("SSI").  Ms. Graham

has timely pursued and exhausted her administrative remedies and the

decision of the ALJ is ripe for review pursuant to 42 U.S.C. §§ 405(g),

1383(c)(3).

T.R.G. was fifteen years old at the time of the ALJ's decision.  (Tr. at 10.) Ms. Graham believes that her daughter became disabled on August 18, 1990, the day of her birth, due to asthma, scoliosis, and eczema (skin rash). *Id.*

In 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act which amended the statutory standard for determining child SSI.  *See* P.L. No. 104-193, 110 Stat. 2105.  The revised standard states that:

> [a]n individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(1).  On September 11, 2000, the SSA published the final rules implementing the act.  *See* 65 Fed. Reg. 5471.  These rules became effective on January 2, 2001.  *See id.*

When evaluating the disability of a child, the regulations prescribe a three-step sequential evaluation process.  *See* 20 C.F.R. § 416.924(a).  The first step requires a determination of whether the child is "doing substantial

gainful activity." *Id*.  If he or she is, then the child is not disabled and the evaluation stops.  *Id*.  If the child is not engaged in substantial gainful activity, the second step requires the ALJ to determine whether he or she suffers from a severe impairment or combination of impairments.  *Id*.  An impairment is considered "severe" if it causes more than minimal functional limitations.  20 C.F.R. § 416.924(c).  If the impairments are  not severe, the analysis stops.  20 C.F.R. § 416.924(a).  However, if the impairments are "severe," the third step requires the ALJ to determine if one of the impairments meets or equals an impairment listed in Appendix 1 to Subpart P of Part 404.  *Id*.  If the child has such an impairment and it meets the durational requirement, the ALJ will find that he or she is disabled.  *Id*.  If they do not meet each of the criteria enumerated in the listings, the ALJ must decide whether the impairment or combination of impairments "functionally equals" the severity of any listed impairment.  *See* 20 C.F.R. § 416.924(d).

When assessing a child's functional limitations, the ALJ considers all of the relevant factors, such as: how well the child can initiate and sustain activities, how much extra help he or she requires, the effects of structures

or supportive settings, how the child functions in school, and the effects of medications or other treatments on the child's health.   20 C.F.R. § 416.926a.  To determine functional equivalence, the ALJ must evaluate the child's limitations in the following six functional areas, called domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) the ability to care for himself; and (6) health and physical well-being.  *See* 20 C.F.R. § 416.926a(b)(1)(i-vi).  An impairment, or combination of impairments, functionally equals a listed impairment if it results in either "marked" limitations in two of the previously mentioned domains or an "extreme" limitation in one domain.[1]  *See* 20 C.F.R. § 416.926a(a).

Applying this sequential evaluation, the ALJ found that T.R.G. has never engaged in substantial gainful activity.  (Tr. at 16.)  Based on the evidence presented, the ALJ concluded that T.R.G.'s asthma, scoliosis, and eczema are impairments which are considered "severe" according to 20

---

[1]For purposes of deciding the overall limitation in the six functional domains, a "marked" limitation is one that "seriously" interferes with functioning, and an "extreme" limitation is one that "very seriously" interferes with functioning.  *See* 20 C.F.R. § 416.926a(e)(2) and (3).

C.F.R. § 416.924(c). *Id.* at 12. Nonetheless, the ALJ determined that these impairments were not attended with limitations which functionally or medically meet or equal the severity of any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 16. In evaluating functional equivalence, the ALJ the found that T.R.G. had a "marked" limitation in the "moving about and manipulating objects" domain. However, the ALJ concluded that T.R.G. did not have any other "marked" or "extreme" limitations in the other domains, which is necessary in order to satisfy the requirements for functional equivalence in 20 C.F.R. § 416.926a(b)(1)(i-vi). *Id.* As a result, the ALJ ruled that T.R.G. "has not been under a 'disability,' at any time from the alleged onset date through the date of this decision." *Id.*

II.    Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining: (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner; and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401

(1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court

approaches the factual findings of the Commissioner with deference, but

applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d

1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh

evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The

substantial evidence standard permits administrative decision makers to act

with considerable latitude, and 'the possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's

finding from being supported by substantial evidence.'"  *Parker v. Bowen*,

793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting

*Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if

this Court finds that the evidence preponderates against the Commissioner's

decision, the Court must affirm if the decision is supported by substantial

evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for

"despite this deferential standard [for review of claims] it is imperative that

the Court scrutinize the record in its entirety to determine the

reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622,

624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards

is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir.

1984).

III.    Discussion.

Plaintiff argues that the ALJ's ruling is not based on substantial

evidence because the ALJ did not apply proper legal standards in reaching

his decision.  (Doc. 7 at 4.)  Specifically, Plaintiff submits the ALJ failed to

consider certain evidence that could have demonstrated that T.R.G.'s

impairments functionally equaled the severity of an impairment in the

Listings, found at 20 C.F.R. pt. 404, subpt. P, app. 1 (2006).  *Id*. at 5.

In deciding the child's ability to function in each of the six domains,

the ALJ considers information from a number of sources.  *See* 20 C.F.R.

§416.924a.    Although  medical  sources  are  required  to  establish  an

impairment, other non-medical sources can help show the functional effects

of a potentially disabling condition.[2]  *See* 20 C.F.R. §416.925(c).

As part of their initial evaluation, the Disability Determination Services

---

[2]As discussed previously, the ALJ determined that the medical evidence
demonstrated that T.R.G.'s asthma, scoliosis, and eczema are "severe" impairments
within the meaning of 20 CFR § 416.924(c).  Based upon this finding, it was appropriate
for the ALJ to consider non-medical sources in order to determine the functional effects
of these potentially disabling conditions.

sent an eleven-page Teacher Questionnaire to T.R.G.'s school.   This

questionnaire was completed by T.R.G.'s social studies teacher and

presented as evidence at the hearing.   The questionnaire form requested

information about T.R.G.'s ability to function in the following domains: (1)

ability to acquire and use information; (2) attend and complete tasks; (3)

interact and relate with others; (4) move about and manipulate objects; (5)

care for himself or herself; and (6) medical conditions and

medications/health and physical well-being.[3]   (Tr. at 159-65.)   In two of

these domains, "acquiring and using information" and "attending and

completing tasks," the teacher reported various problems.[4]   (Tr. at 159-60.)

---

[3]The rating key for the Teacher Questionnaire was a 5-part scale describing T.R.G.'s problems as "no," "slight," "obvious," "serious," and "very serious."  (Tr. at 159.)

[4]The teacher rated T.R.G.'s abilities in nine sub-categories within the "acquiring and using information" domain.  The teacher stated that T.R.G. had a "slight" problem in comprehending oral instructions; understanding and participating in class discussions; and learning new materials; and an "obvious" problem in understanding school and content vocabulary; reading and comprehending written material; providing organized oral explanations and adequate descriptions; expressing ideas in written form; recalling and applying the previously learned materials; and applying problem-solving skills in class discussions.  (Tr. at 159.)  The teacher gave no ratings of "serious" or "very serious" in the nine sub-categories rated within the "acquiring and using information" domain.  (Tr. 159.)

In the domain of "attending and completing tasks," the teacher rated Plaintiff in eleven sub-categories, stating that she had "no" problem in paying attention when spoken to directly; changing activities without being disruptive; and working without

Plaintiff argues that the ALJ failed to properly consider the teacher's evaluation because the ALJ's findings did not specifically address the problems that the teacher reported or give any reasons for rejecting those opinions.  (Doc. 7 at 9.)

"The ALJ should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence[.]" *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990) (citing *Gibson v. Heckler*, 779 F.2d 619 (11th Cir. 1986) (holding that the failure to state specifically the weight accorded each item of evidence and the reasons for accepting/rejecting the evidence mandates a reversal)).

In *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981), the Eleventh Circuit held that the ALJ erred because his decision did not make clear the weight accorded to the various testimony considered.  The Eleventh Circuit stated that:

---

distracting herself or others; a "slight" problem in refocusing to task and carrying out single-step instructions; an "obvious" problem in focusing long enough to finish a task; carrying out multi-step tasks; organizing her own things or school materials; and completing work accurately without careless mistakes; a "serious" problem completing class/homework assignments; and a "very serious" problem working at a reasonable pace/finishing on time.  (Tr. at 160.)

> The decision states only that the ALJ has carefully considered all of the testimony . . . and exhibits . . . and has given weight to each as he feels should be properly accorded to it.  This statement tells us nothing whatsoever it goes without saying that the ALJ gave the testimony the weight he believed should be accorded to it.  What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision.  In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.  Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Id.* (internal quotation marks and citations omitted).

In his decision, it appears that the ALJ did rely on the teacher's responses to the questionnaire at certain points.  For example, in his analysis of T.R.G.'s ability to "attend to and complete tasks," the ALJ cited the teacher's responses for three out of thirteen total tasks evaluated under this domain.  However, the only three tasks that the ALJ noted were the areas where the teacher reported "no problems."  (Tr. at 14, 160.)  There was no mention of the other ten tasks or skills that the teacher reported as problem areas.  *Id.* at 14, 160.  In that domain, the teacher reported that

T.R.G. has a "slight problem" with two categories, an "obvious problem" in

four, a "serious" problem in one and a "very serious" problem in one.  *Id.*

at 160.  The most serious problem was reported in the category for "working

at a reasonable pace/finishing on time."  *Id.*  Further, the teacher stated

that these problems occur on a daily basis.  *Id.*  The teacher also

commented that T.R.G. has difficulty completing assignments in class and

at home and that she "has a hard time comprehending material presented

in class."  *Id.*  The teacher evaluation demonstrates that T.R.G. may have

some deficits in this domain and the ALJ's decision offers no explanation for

rejecting these concerns.  Instead, the ALJ only cited the three areas where

the teacher reported "no problems" and concluded that, "[t]here are no

problems alleged in this area."  *Id.*

The teacher also gave an opinion of T.R.G.'s impairment in the domain

of "acquiring and using information."  *Id.* at 159.  In this domain, the

teacher stated that T.R.G. has an obvious problem in six of ten areas and a

slight problem in two of the other ten areas.  *Id.*  In the comments section

for this category, the teacher wrote that, "[T.R.G.] has difficulty reading

and comprehending questions throughout the chapters presented.  She often

works at a much slower pace than the rest of the class.  Individual attention is needed to help her and is often given." *Id.*

In his analysis of this domain, the ALJ found that T.R.G. "has no limitations" acquiring and using information.  *Id.* at 14.  In so doing, it appears that the ALJ relied solely on the T.R.G.'s testimony where she said that "she does well in school." *Id.*  In fact, the teacher's report was not even mentioned in the ALJ's analysis of this domain.  Arguably, the teacher's report is the more credible evidence about T.R.G.'s abilities than the child's own opinion of herself.  Regardless, the ALJ erred in failing to even mention the teacher's answers from the questionnaire or explain his reasons for rejecting the teacher's opinions.

The Commissioner argues that the evidence cited by the ALJ substantially supports the finding that T.R.G.'s impairments did not functionally equal the severity of any listed impairment.  *See* Doc. 8.  He also argues that the teacher's questionnaire supports these findings.[5]  *Id.*

---

[5]Based on the language of 20 C.F.R. § 416.926a(e)(2) and (3), a "marked" limitation is one that "seriously" interferes with functioning, and an "extreme" limitation is one that "very seriously" interferes with functioning.  The Commissioner argues that because the teacher gave no ratings of "serious" or "very serious" in the nine sub-categories rated within the "acquiring and using information" domain, the teacher

However, the very analysis of the teacher's questionnaire conducted by the Commissioner was completely lacking from the ALJ's decision.  Without offering any explanation, the ALJ considered very little of the testimony offered by T.R.G.'s teacher in deciding that she had only one "marked" limitation.  In the absence of such an explanation **by the ALJ** as to why he rejected the teacher's opinions, it is impossible for this Court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.  *See Cowart*, 662 F.2d at 735.

IV.   Conclusion.

Upon close review of the administrative record, and considering all of Plaintiff's arguments, the Court finds that the ALJ's decision is not supported by substantial evidence.  For the foregoing reasons, the ALJ's denial of benefits to Ms. Graham is **vacated**, and the case is **remanded** to the ALJ for further proceedings consistent with this opinion.   A

---

did not opine that T.R.G. had any "marked" or "extreme" limitations in this area.

In the domain of "attending and completing tasks," the Commissioner argues that a fair interpretation of the teacher's overall opinion about Plaintiff's ability to attend and complete tasks shows a less than "marked" limitation (i.e., the overwhelming number of sub-categories were rated less than "serious" despite the fact that one sub-category was rated as "serious" and one sub-category was rated as "very serious").

corresponding order will be entered contemporaneously with this

Memorandum of Opinion.

      Done this <u>7th</u> day of January 2008.


_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153